IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| COMPASS BANK, | § | |
|     Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | EP-11-CV-228-PRM |
| | § | |
| CARLOS E. VEYTIA and VERONICA | § | |
| L. VEYTIA, | § | |
|     Defendants/Counter-Plaintiffs. | § | |

## MEMORANDUM OPINION AND ORDER ON RULE 12(b)(1) MOTIONS

On this day, the Court considered two motions and their related filings: (1) Plaintiff/Counter-Defendant Compass Bank's (Compass) "Rule 12(b)(1) Motion to Dismiss the Counterclaims of Carlos E. Veytia and Veronica L. Veytia" (ECF No. 144) [hereinafter Compass's 12(b)(1) Motion], filed on September 30, 2011 and (2) Defendants/Counter-Plaintiffs Carlos E. Veytia and Veronica L. Veytia's (the Veytias) "Rule 12(b)(1) Motion to Dismiss" (ECF No. 152) [hereinafter the Veytias's 12(b)(1) Motion], filed on October 18, 2011. After due consideration, the Court is of the opinion that Compass's 12(b)(1) Motion should be granted and the Veytias's 12(b)(1) Motion should be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The live pleading in this case is Compass's "Second Amended Complaint and Original Third-Party Complaint" [hereinafter Amended Complaint], wherein it alleges that Vey Finance, LLC (Vey), a secondary mortgage finance business, defaulted on a series of loan agreements made with State National Bank. Am. Compl. ¶¶ 1-4, 12-24, Aug. 17, 2010, ECF No. 31. Compass contends that it is the successor in interest to State National Bank and that the Veytias, who are the principals of Vey, have personally guaranteed Vey's loans. *Id.* ¶¶ 65-71. However,

Compass claims that the Veytias have failed to perform pursuant to their guaranty agreements. Compass also brings separate claims against Carlos Veytia[1] as the guarantor of Casa Palmira, LLP's (Casa) debts. Compass asserts that the Veytias and Vey are the principals of Casa and that Casa defaulted on several loans that were personally guaranteed by Carlos Veytia.[2] *Id.* ¶¶ 55-64, 75-81.

On June 1, 2011, after the original case[3] had been stayed following Vey's entry into bankruptcy protection, the Court severed all of the defendants, including the Veytias, who were not subject to the bankruptcy stay. Order Severing Defs., ECF No. 103. Additionally, the Court created the above-captioned cause so that Compass could pursue its claims. *Id.* After Casa filed for bankruptcy, the Court severed Casa from the above-captioned cause, leaving the Veytias as the only defendants.[4] *See* Order Staying & Severing Cause, Aug. 2, 2011, ECF No. 126. Also on June 1, 2011, the Court granted the Veytias leave to amend their Counterclaims.[5]

---

[1] Unless otherwise specified, the discussion herein relating to "the Veytias" applies equally to Carlos Veytia individually.

[2] In full, Compass's claims are: (1) given default by Vey on eight different loans, that the Veytias are personally liable to Compass for the debts of Vey pursuant to the terms of the guaranty agreements signed by the Veytias; (2) that the Veytias are obligated to provide Compass with an accounting; (3) that Carlos Veytia, in his individual capacity, is liable to Compass for two loans that he personally guaranteed and on which Casa subsequently defaulted; and (4) that Compass is entitled to recover its attorney's fees. Am. Compl. ¶¶ 65-84.

[3] The original case was assigned the cause number EP:10-CV-137-PRM.

[4] Compass's claims against third-party defendants, Octavio Maese, Ocho Finance, LLC, and OMC Services, LP, all parties who never entered an appearance, were dismissed for failure to state a claim. Order Denying Third-Party Pl.'s Mot. for Default J., July 1, 2011, ECF No. 118.

[5] Casa Palmira's First Am. Answer & Vey Finance, LLC, Carlos E. Veytia, &Veronica L. Veytia's Third Am. Answer, Countercl. & Relief for Declaratory J. to Pl.'s Second Am. Original Compl. [hereinafter Counterclaims], June 1, 2011, ECF No. 104. Vey, Casa, and the

As a result, only Compass's claims against the Veytias and the Veytias's Counterclaims against Compass are now before the Court.

In their Counterclaims, the Veytias explain that they are the "principal interest holders and managers of [Vey]." Countercls. ¶ 101. The Veytias allege that Compass's employees wrongfully and without authorization "withdrew funds, increased lines of credit or increased loan balances from loan accounts that had been paid down or paid in full by Vey." Resp. ¶ 9 (summarizing the Counterclaims); Countercls. ¶¶ 108-16. As a result, the Veytias assert the following claims against Compass: (1) "breach of contract," (2) "breach of fiduciary duty," (3) "respondeat superior," (4) "negligent hiring/training/supervision," (5) "accounting," and (6) "rescission" of a particular consolidation loan between the parties. Countercls. ¶¶ 133-46. Additionally, the Veytias seek (7) declaratory relief regarding the amounts owed by the parties and (8) attorney's fees incurred by the Veytias. *Id.* 147-49, 152.

Both parties bring motions to dismiss for lack of standing. Each motion will be discussed in more detail below.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and therefore have power to adjudicate claims only when jurisdiction is

---

Veytias sought leave of the Court to file the Counterclaims on May 3, 2011. Defs.' Mot. for Leave to File Casa Palmira's First Am. Orginal Answer & Vey Finance, LLC, Carlos E. Veytia, & Veronica L. Veytia's Third Am. Answer, Countercl. & Relief for Declaratory J., ECF No. 91. Vey and the Veytias first filed counterclaims on April 29, 2010. Defs.' Original Answer, Counterclm. & Relief for Declaratory J. to Pl.'s Original Compl., ECF No. 6.

conferred by statute or the Constitution. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Where, as here, the defendant's challenge to jurisdiction is brought as a challenge to the plaintiff's standing to bring suit, the defendant is challenging whether there is a case or controversy between the parties that is cognizable under the Constitution. *Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 216 (5th Cir. 1989). Moreover, where the plaintiff's claims are founded on contractual relationships and theories, as they are in the instant case, the plaintiff must establish privity in order to meet the requirements of standing. *Id.* at 217.

Given that this case is before the Court based upon diversity jurisdiction and that common law claims are at issue, pursuant to the *Erie* doctrine, the Court looks to state law to determine the applicable criteria for standing. *Id.* at 217 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

While the burden of proof falls on the plaintiff to show that jurisdiction does exist, "ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [the] plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A district court may base its determination on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010) (citations and quotations omitted).

## III. ANALYSIS

### A. Preliminary Objections by the Veytias

The Court denies all of the Veytias's "Preliminary Objections" that appear in its various filings.[6]

---

[6] Versions of these objections appear in the Veytias's Response ¶¶ 1-8, ECF No. 148 and Reply ¶¶ 1-7, ECF No. 179. First, the Veytias ask the Court to strike the exhibits referenced in certain footnotes to Compass's 12(b)(1) Motion because those exhibits were not attached to the motion itself, in violation of Local Rule CV-7. Resp. ¶¶ 1-2, ECF No. 148. The Court denies this request given that Compass contemporaneously filed the document referenced in the footnotes in its "Motion for Summary Judgment Against Defendants Carlos E. Veytia and Veronica L. Veytia" (ECF No. 147), docketed on October 3, 2011.
Second, the Veytias contend that a number of exhibits are not admissible because they are not authenticated. *Id.* ¶¶ 3-4. This objection is groundless given the facial authenticity of the exhibits and the supporting affidavits; there is more than sufficient evidence to conclude that the documents are what Compass purports them to be.
Third, the Veytias ask the Court to strike certain guaranty agreements attached as exhibits because the guaranties were not produced until after the close of discovery. *Id.* ¶ 5. The Veytias have known of the guaranties from the date upon which they executed the agreements. They have known that these guaranties were the subject of Compass's claims since May 21, 2010 for the Vey-related guaranties, and since August 17, 2010 for the Casa-related guaranties. *See* Pl.'s First Am. Compl., ECF No. 11 (bringing claims related to the omitted Vey-related guaranties); Am. Compl. (bringing claims related to the omitted Casa-related guaranties). Despite the Veytia's knowledge and although the agreements were arguably requested in discovery and were not timely produced, the Veytias did not pursue production of the documents in an appropriate or timely manner. Such a request should be made in a motion to compel discovery. *See GFI Computer Indus., Inc., v. Fry*, 476 F.2d 1, 3 (5th Cir. 1973) ("Plaintiff's remedy for . . . failure to produce pursuant to a Rule 34 request, was to file a motion under Rule 37(a) for an order requiring defendant to answer and to produce documents for inspection."). However, the Veytias did not request production of these documents in their June 9, 2011, motion to compel (ECF No. 106), a motion which they later withdrew (ECF No. 124). The Court's deadline to file such motions expired on September 19, 2011. (Fourth Am. Scheduling Order, June 28, 2011, ECF No 117). Therefore, there is no plausible argument that the Veytias have been surprised by the existence of these documents and they had ample recourse to acquire the documents earlier in the proceedings.
Fourth, the Veytias seek to strike portions of a declaration used by Compass to support its claim that it is the successor in interest to State National Bank for lack of personal knowledge. Resp. ¶¶ 6-7, ECF No. 148. Yet, it is evident from the declarant's tenure and role within Compass that the declaration is, in fact, based on personal knowledge.

B.  **Compass's 12(b)(1) Motion to Dismiss Counterclaims**[7]

In Compass's 12(b)(1) Motion, Compass argues that the Veytias's Counterclaims must be dismissed for lack of subject matter jurisdiction because the Veytias lack standing to bring such claims. Compass's 12(b)(1) Mot. 1-2. Compass contends, and the Veytias do not dispute,[8] that the Counterclaims all stem from various allegedly unauthorized transactions relating to loans, lines of credit, and accounts held, not by the Veytias, but by Vey. *Id.* at 3-4. Therefore, Compass argues that the Veytias's lack standing to bring the Counterclaims in their individual capacities because the Veytias are not parties in privity (in their individual capacities) to any of the agreements underlying the loans, lines of credit, or accounts giving rise to the unauthorized transactions. *Id.*

Generally, a plaintiff must show that there is a case or controversy between *itself* and the defendant in order to assert a claim. *See Barrett*, 884 F.2d. at 216; *In the Interest of B.I.V.*, 923 S.W.2d 573, 574 (Tex. 1996) ("To establish standing, a person must show a personal stake in the controversy."). Moreover, the Veytias do not become parties to the underlying promissory notes

---

[7] The documents filed in relation to Compass's 12(b)(1) Motion and cited in this section are: the Veytias's "Response to Compass Bank's Rule 12(b)(1) Motion to Dismiss Counterclaims and Motion to Strike Compass Bank's Rule 12(b)(1) Proof" (ECF No. 148) [referred to in this section as Response], filed on October 14, 2011; and Compass's Reply in Support of Its Rule12(b)(1) Motion to Dismiss the Counterclaims of the Veytias" (ECF No. 153) [referred to in this section as Reply], filed on October 25, 2011.

[8] Not only do the Veytias fail to dispute this characterization of their Counterclaims, their assessment is similar. For example, they describe, as the "basis of their Counterclaims," malfeasance on the part of Compass who "withdrew funds, increased lines of credit or increased loan balances from loan accounts that had been paid down or paid in full *by Vey*." Resp. ¶ 9 (emphasis added). Additionally, a report prepared by the Veytias's expert to assess the damages suffered by Vey refers exclusively to the accounts and loans held by Vey and Casa, not the Veytias. Summ. J. Mot. Ex. F. Moreover, the Veytias make no mention of the guaranty agreements in the Counterclaims.

by virtue of the guaranty agreements. *See FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990) (stating that guarantors were not parties to the underlying note they guaranteed); *Simpson v. Mbank Dallas, N.A.*, 724 S.W.2d 102, 105 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (stating that a guarantor of a promissory note was not a party to the underlying promissory note). Therefore, whereas Vey might have standing to bring the Counterclaims, the Veytias do not.

### 1. Breach of Contract

The Veytias do not dispute the application to their case of the general standing principles described above. Instead, they claim standing through exceptions to the general rules. As to their breach of contract counterclaim, the Veytias acknowledge the general prohibition against guarantor standing to assert claims of the principal debtor; however they contend that guarantors of insolvent entities are exempted from this restriction. Resp. ¶¶ 21-22 (citing *Continental Group, Inc. v. Justice*, 536 F. Supp. 658, 661 (D. Del. 1982); *Arctic Contractors, Inc. v. State of Alaska*, 573 P.2d 1385, 1387 (Alaska 1978); Restatement of Security § 133(2) (1941)). However, the Veytias fail to offer any support from Texas law, the law which the Court is required to apply under the present circumstances. *See, e.g., Barrett*, 884 F.2d at 217 (applying state substantive law to standing issues in a diversity case).

Under Texas law, guarantors do not have standing to bring claims for breach of contract on behalf of the principal debtor even when, as here, the debtor is both insolvent and the guarantor is its principal owner. *See Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 78-79 (Tex. App.—Texarkana 2008, pet. denied) (dismissing breach of contract counterclaim made by guarantor who was also a shareholder and founder of debtor-entity whose debt he personally guaranteed; and also noting that the debtor entity had been severed from the action because it

declared bankruptcy); *see also Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) ("A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong.").

Given that the burden of establishing jurisdiction is on the Veytias and Texas law is contrary to the legal authority they assert, the Court concludes that the Veytias lack standing to bring their breach of contract claim.

### 2. Breach of Fiduciary Duty

As to their breach of fiduciary duty claim, the Veytias concede that, in general, Texas law maintains that there is no fiduciary relationship between a creditor and borrower or guarantor.[9] Resp. ¶ 24. Yet, they contend that "courts have established fiduciary relationships between borrower and lender when the lender has excessive control or influence in the borrower's business activities." *Id.* (citing *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)).

However, the only relationship implicated by the unauthorized transactions and loans, lines of credit, and accounts in issue in the Counterclaims is the relationship between Compass and Vey—not the relationship between the Veytias and Compass vis-à-vis the guaranty agreements. The Veytias's argument does not confer standing, even if the Court found it

---

[9] *See FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990) (stating that the "relationship between a creditor and guarantor does not ordinarily import a duty of good faith"); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) (no fiduciary relationship between banker who made personal loans and took interest in the business and the borrower); *Davis v. West*, 317 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("The relationship between a bank and its customers does not usually create a special or fiduciary relationship."); *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("The relationship between a borrower and lender is usually neither a fiduciary relationship nor a special relationship.").

8

appropriate. Rather, their theory could only create a fiduciary duty on the part of Compass to Vey.

### 3. Other Counterclaims

The Veytias's remaining claims are for negligent hiring, training, or supervision; respondeat superior; an accounting; rescission of a consolidation loan; and declaratory relief. Despite Compass's specific attacks on each of the foregoing claims, the Veytias fail to argue that they have standing to bring these claims in their Response. *Compare* Resp. *with* Compass's 12(b)(1) Mot. 7-9. Accordingly, the Veytias have failed to meet their burden of establishing their standing to bring the remaining claims. Moreover, the remaining Counterclaims, like those previously discussed, are based on Vey's contracts and relationship with Compass and the Veytias lack standing to bring such claims.

In light of the foregoing, the Court concludes that the Veytias have not met their burden of establishing standing to bring their Counterclaims and have failed to establish that the Court has subject matter jurisdiction over their claims. Accordingly, the Court dismisses all of the Veytias's Counterclaims.

## C. The Veytias's 12(b)(1) Motion[10]

The Veytias offer four arguments in support of their 12(b)(1) Motion: first, that Compass has not demonstrated that it is the successor in interest to State National Bank; second, that Compass has not complied with the Texas Property Code, section 13.001; third, that Compass has not followed the Texas Business and Commerce Code, section 3.201, and fourth, that

---

[10] The documents filed in relation to the Veytias's 12(b)(1) Motion and cited in this section are: Compass's "Response in Opposition to Carlos E. Veytia and Veronica L. Veytia's Rule 12(b)(1) Motion to Dismiss" (ECF No. 155) [referred to in this section as Response], filed on November 1, 2011; and the Veytias's "Reply in Support of the Their Rule 12(b)(1) Motion to Dismiss" (ECF No. 179) [referred to in this section as Reply], filed on November 16, 2011.

Compass lacks standing to assert claims regarding three specific loans.[11] Veytias's 12(b)(1) Mot. ¶ 22.

### 1. Successor in Interest

First, the Veytias contend that (1) "there is no evidence to establish that Compass has standing to enforce" its claims because Compass has not established that it is the successor in interest to State National Bank. *Id.* ¶ 22. In response, Compass contends that the Veytias have admitted in their Counterclaims[12] that Compass is the successor in interest to State National Bank.[13] Additionally, Compass offers the "Article of Merger" and the "Plan of Merger and Reorganization Agreement" (collectively, Merger Documents) that describe the manner in which State National Bank was merged into Compass Bank in 2008. Resp. Ex. G-2.

Although the Veytias characterize their challenge as a factual attack, their challenge to

---

[11] Each of the Veytias's arguments are premised on the notion that there is "no evidence" or "no documents" provided by Compass on certain issues which the Veytias, often wrongly, conclude are required to be proven by Compass. *See* Veytias's 12(b)(1) Mot. ¶ 22 (using the phrase "no evidence" three times and the phrase "no documents" once to summarize the points of their motion). Asserting that an opponent lacks evidence of an essential element is the kind of argument that is most appropriate in a motion for summary judgment. 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2727 at 474 (3d ed. 2008) (explaining that "the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (stating that a motion for summary judgment may be granted in some cases "regardless of whether the moving party accompanies its summary judgment motion with affidavits"). The Court required the parties to file dispositive motions by September 30, 2011, however the Veytias did not do so. Accordingly, the Court concludes that the Veytias are attempting to circumvent the Court's deadlines—the Veytias are not permitted to accomplish indirectly, what they could not do directly.

[12] Although referred to in this Order as Counterclaims for brevity, the Veytias's Counterclaims contains their counterclaims *and* their answer to Compass's Amended Complaint.

[13] *Compare* Countercl. ¶ 1 (admitting the allegations in paragraph one of Compass's Amended Complaint) *with* Am. Compl. ¶ 1 (characterizing "Compass Bank as the successor-in-interest to State National Bank"). The Veytias assert that their admission that Compass is the successor in interest to State National Bank does not extend to all loans and does not include the issue of privity. Reply ¶¶ 9-10. This assertion rings hollow.

Compass's status as the successor in interest to State National Bank is more properly construed as a facial attack.[14] A factual attack raises a dispute as to the existence of a fact necessary for jurisdiction. *See Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981) (characterizing a "factual attack" as one that "challenges the facts on which jurisdiction depends"). However, the Veytias do not actually dispute Compass's factual assertion that it is the successor in interest to State National Bank.[15] Merely attaching affidavits and the like does not create a factual attack unless those affidavits contradict or challenge a fact necessary for jurisdiction.

Yet, Compass has not only properly alleged that it is the successor in interest to State National Bank, thus defeating a facial attack, but it has also demonstrated that it is the successor in interest by a preponderance of the evidence and can therefore withstand a factual attack. The Merger Documents themselves are adequate to substantiate Compass's assertion that it is the successor in interest to State National Bank, particularly in light of the Veytias's failure to offer any contradictory evidence.[16]

---

[14] A facial attack occurs when a defendant files a Rule 12(b)(1) motion unaccompanied by supporting evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (citations omitted). In that instance, "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.* To bring a factual attack, the defendant must submit "affidavits, testimony or other evidentiary materials" to support its position. Thereafter, a plaintiff is required to respond in kind "and has the burden of proving by a preponderance of the evidence that the trial court does have ... jurisdiction." *Id.* "[N]o presumptive truthfulness attaches to plaintiff's allegations" and the court may determine disputed material facts in order to adjudicate the jurisdictional claims. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citations and internal quotations omitted).

[15] Not only have the Veytias admitted that Compass is the successor in interest to State National Bank in their Counterclaims, *supra* n.13, in the "Affidavit of Carlos Veytia," sworn to in October of 2011, Carlos Veytia offers that he has been working with Compass to resolve "all the loans in question." Veytias's 12(b)(1) Mot. Ex. J ¶ 10. Carlos Veytias's efforts to work with Compass, as opposed to some other entity, to address Vey's indebtedness to Compass, and the Veytias's admissions in their pleading, show that the Veytias do not seriously dispute Compass's status as the successor in interest to State National Bank.

[16] Similarly, the "Declaration of Mike Lewis," a Compass employee prior to the merger, attests to Compass's status as successor in interest to State National Bank. *See Cadle Co. v.*

11

### 2. Procedure Purportedly Required by the Texas Property Code

Second, the Veytias assert that "no evidence has been produced" indicating that Compass has filed documents in the records of deeds as required by the Texas Property Code section 13.001. Veytias's 12(b)(1) Mot. ¶ 22. Texas Property Code section 13.001 is Texas's deed recording statute. "The purpose of this statute is to protect innocent purchasers without notice of a prior transfer from being injured or prejudiced by their ignorance of a competing claim." *Austin v. Countrywide Home Loans*, 261 S.W.3d 68, 74 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). Compass's claims against the Veytias deal with the guaranty agreements made between the two parties and do not implicate an attempt to set aside a conveyance in real estate. *See id.* (explaining that the statute has no bearing where there is no attempt to set aside a conveyance). Moreover, the Veytias have not attempted to develop this implausible argument.[17]

### 3. Procedure Purportedly Required by the Texas Business and Commerce Code

Third, the Veytias argue that "no documents have been produced" demonstrating that Compass complied with the Texas Business and Commerce Code section 3.201. Veytias's 12(b)(1) Mot. ¶ 22. Compass counters that the guaranty agreements at issue are not negotiable instruments, therefore, section 3.201 does not apply. Resp. 6.

Section 3.201 "applies to negotiable instruments." Tex. Bus. & Com. Code Ann. § 3.201 (West 2010). Once again, the Veytias fail to support, with any legal authority, even the most fundamental point of their argument, namely that section 3.201 is applicable to the present case. Under the circumstances before the Court, indeed under most circumstances, a guaranty

---

*Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) (affidavit describing succession and history by which entity obtained interest in a judgment was adequate to show standing).

[17] In fact, the Veytias make no mention of it in their Reply.

agreement is not a negotiable instrument and is not governed by section 3.201.[18] *FDIC v. Coleman*, 795 S.W.2d 706, 710 (Tex. 1990) (holding that "guaranties were not negotiable instruments"); *FDIC v. Nobles*, 901 F.2d 477, 480 (5th Cir. 1990) ("A guaranty that is a separate document is not considered a negotiable instrument"); *Material P'ship, Inc. v. Ventura*, 102 S.W.3d 252, 260 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Vaughn v. DAP Fin. Servs., Inc.*, 982 S.W.2d 1, 6 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

### 4. Compass's Standing on Loans for Which There Are No Specific Guaranty Agreement

Fourth, the Veytias assert that "there is no evidence to establish that Compass has any contractual rights to assert claims" over three loans (the First Chapel Downs Loan, the Boling Loan, and the Guidance Line Loan [collectively, the Three Loans]), which were not accompanied by specific guaranty agreements signed by the Veytias, unlike the other five Vey-related loans at issue. Veytias's 12(b)(1) Mot. ¶¶ 17-20. According to the Veytias, Compass has no standing to pursue claims over those loans because the Veytias have not signed separate documents, each personally guaranteeing the Three Loans. *Id.* ¶ 24. The Veytias offers no legal authority to support the notion that each separate loan requires a separate guaranty agreement to establish standing.[19]

In fact, "Texas case law recognizes that a guaranty may be continuing or specific. A continuing guaranty contemplates a future course of dealing between the lender and debtor, and

---

[18] The Veytias attempt to reanimate this argument by asserting that the underlying promissory notes are negotiable and that Compass is not a proper holder. Reply 11-22. Whatever the merits of this argument might be, it is not one that deprives Compass of *standing* to assert claims pursuant to the guaranty agreements.

[19] The Veytias contend that "for a party to recover under a guarant[y] agreement, a party must first show the existence and ownership of a guaranty agreement." Reply ¶ 24. This argument does not relate to standing, but instead relates to what Compass must prove on the merits.

13

the guaranty applies to other liabilities as they accrue." *Beal Bank, SSB v. Biggers*, 112 S.W.3d 187, 192 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 277 (5th Cir. 1991) (applying Texas law and making the distinction between specific and continuing guaranties based upon the plain language of the agreement).

In support of its position, Compass has presented evidence of continuing guaranty agreements that were signed by the Veytias both before and after the Three Loans were initiated, the terms of which purport to encompass all pre-existing and subsequently-incurred debt between the parties. Resp. 7. For example, the terms of the Tierra Humeda guaranty, signed by the Veytias over ten months before the first of the Three Loans was signed, contains the heading "Continuing Unlimited Guaranty" and provides that "[t]he indebtedness guaranteed by the Guaranty includes any and all of [Vey's] indebtedness to [State National Bank] and . . . includes any and all of [Vey's] liabilities, obligations and debts to [State National Bank], now existing or hereinafter incurred or created . . . ."[20] Resp. Exs. A-5, A-6. Thus, before the Veytias, as principals of Vey, signed each of the Three Loans, they had already agreed to guarantee Vey's future debt. Similarly, six months after the last of the Three Loans was signed, the Veytias guaranteed Vey's indebtedness to State National Bank that was "now existing or hereinafter arising or acquired, on an open and continuing basis." *Id.* Exs. A-15, A-16.

Compass seeks to hold the Veytias liable based on the terms of the agreements that the Veytias have actually signed. Resp. 7. The terms of the guaranty agreements provided to the Court, and which the Veytias do not contest signing, each purport to obligate the Veytias, as guarantors, to pay the debts stemming from the Three Loans even though the Three Loans are not specifically referenced. Therefore, Compass has privity with the Veytias through the undisputed guaranty agreements and, therefore, has standing to sue based upon all of the loans at issue.

---

[20] The other guaranty agreements contain similar language.

## IV. CONCLUSION

The Court dismisses the Veytias's Counterclaims because the Veytias have failed to establish their standing to bring such claims. Conversely, the Court has subject matter jurisdiction over Compass's claims because Compass has demonstrated its standing through the guaranty agreements.

Accordingly, **IT IS ORDERED** that Plaintiff/Counter-Defendant Compass Bank's "Rule 12(b)(1) Motion to Dismiss the Counterclaims of Carlos E. Veytia and Veronica L. Veytia" (ECF No. 144) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants/Counter-Plaintiffs Carlos E. Veytia and Veronica L. Veytia's Counterclaims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants/Counter-Plaintiffs Carlos E. Veytia and Veronica L. Veytia's "Rule 12(b)(1) Motion to Dismiss" (ECF No. 152) is **DENIED**.

**SIGNED** this **5th day of December, 2011.**

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE