IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| COMPASS BANK, | § | |
| --- | --- | --- |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-11-CV-228-PRM |
| | § | |
| CARLOS E. VEYTIA and VERONICA | § | |
| L. VEYTIA, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

On this day, the Court considered Compass Bank's (Compass) "Motion for Summary Judgment Against Defendants Carlos E. Veytia and Veronica L. Veytia" (ECF No. 147) [hereinafter Motion for Summary Judgment], filed October 3, 2011; Carlos E. Veytia's and Veronica L. Veytia's (the Veytias) "Response to Compass Bank's Motion for Summary Judgment" (ECF No. 150) [hereinafter Response], filed October 18, 2011; and Compass's "Reply in Support of its Motion for Summary Judgment Against Defendants Carlos E. Veytia and Veronica L. Veytia" (ECF No. 156) [hereinafter Reply], filed on November 1, 2011 in the above-captioned cause. After due consideration, the Court is of the opinion that Compass's Motion for Summary Judgment should be granted for the reasons that follow.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The live pleading in this case is Compass's "Second Amended Complaint and Original Third-Party Complaint" [hereinafter Amended Complaint], wherein Compass alleges that Vey Finance, LLC (Vey), a secondary mortgage finance corporate entity, defaulted on a series of loan agreements made with State National Bank. Am. Compl. ¶¶ 1-4, 12-24, Aug. 17, 2010, ECF No. 31. Compass contends that it is the successor in interest to State National Bank and that the

Veytias, who are the principals of Vey, have personally guaranteed Vey's loans. *Id.* ¶¶ 65-71. Compass further claims that the Veytias have failed to perform pursuant to their guaranty agreements. Moreover, Compass also brings separate claims against Carlos Veytia[1] as the guarantor of Casa Palmira, LLP's (Casa) debts. Compass asserts that the Veytias and Vey are the principals of Casa and that Casa defaulted on several loans that were personally guaranteed by Carlos Veytia.[2] *Id.* ¶¶ 55-64, 75-81.

On June 1, 2011, after the original case[3] had been stayed following Vey's entry into bankruptcy protection, the Court severed all remaining defendants, including the Veytias, who were not subject to the bankruptcy stay. Order Severing Defs., ECF No. 103. The severed defendants then became part of the instant cause allowing Compass to pursue its claims. *Id.* On August 2, 2011, after Casa filed for bankruptcy, the Court severed Casa from the above-captioned cause, leaving the Veytias as the only defendants.[4] *See* Order Staying & Severing Cause, ECF No. 126. Also on June 1, 2011, the Court granted the Veytias leave to amend their

---

[1] Unless otherwise specified, the discussion herein relating to "the Veytias" applies equally to Carlos Veytia individually.

[2] In full, Compass's claims are: (1) that the Veytias are personally liable to Compass for the debts of Vey pursuant to the terms of the guaranty agreements signed by the Veytias, given default by Vey on eight different loans; (2) that the Veytias are obligated to provide Compass with an accounting; (3) that Carlos Veytia, in his individual capacity, is liable to Compass for two loans that he personally guaranteed and on which Casa subsequently defaulted; and (4) that Compass is entitled to recover its attorney's fees. Am. Compl. ¶¶ 65-84.

[3] The original case was assigned the cause number EP:10-CV-137-PRM.

[4] Compass's claims against third-party defendants, Octavio Maese, Ocho Finance, LLC, and OMC Services, LP, all parties who never entered an appearance, were dismissed for failure to state a claim. Order Denying Third-Party Pl.'s Mot. for Default J., July 1, 2011, ECF No. 118.

Counterclaims.[5] However, on December 5, 2011, the Court dismissed all of the Veytias's Counterclaims for lack of subject matter jurisdiction. Mem. Op. & Order on Rule 12(b)(1) Mots. 9, 15, ECF No. 188. Consequently, only Compass's claims against the Veytias are now before the Court.

In its Motion for Summary Judgment, Compass petitions the Court to enter judgment against the Veytias based upon the Veytias's alleged breach of the guaranty agreements.[6]

## II. LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists only if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In a motion for summary judgment, "[t]he moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by 'point[ing] out the absence of evidence supporting the nonmoving party's case.'" *Nat'l Ass'n of Gov't Employees v. City Pub.*

---

[5] Casa Palmira's First Am. Answer & Vey Finance, LLC, Carlos E. Veytia, &Veronica L. Veytia's Third Am. Answer, Countercl. & Relief for Declaratory J. to Pl.'s Second Am. Original Compl. [hereinafter Counterclaims], June 1, 2011, ECF No. 104. Vey, Casa, and the Veytias sought leave of the Court to file the Counterclaims on May 3, 2011. Defs.' Mot. for Leave to File Casa Palmira's First Am. Orginal Answer & Vey Finance, LLC, Carlos E. Veytia, &Veronica L. Veytia's Third Am. Answer, Countercl. & Relief for Declaratory J., ECF No. 91. Vey and the Veytias first filed counterclaims on April 29, 2010. Defs.' Original Answer, Countercl. & Relief for Declaratory J. to Pl.'s Original Compl., ECF No. 6.

[6] The claim for an accounting is not addressed in the Motion for Summary Judgment.

*Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994) (quoting *Latimore v. Smithkline French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990)). If the moving party has satisfied its initial burden, the non-movant must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When a party requests that a court grant its motion for summary judgment, a court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). While a court will resolve factual controversies or disputes in the non-movant's favor, it must do so "only when there is an *actual* controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis added). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Sufficient support for summary judgment may be adduced from documents, affidavits, declarations, and other materials in the record. FED. R. CIV. P. 56(c). Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.*

### III. ANALYSIS

#### A. Preliminary Objections by the Veytias

At the outset, the Court denies all of the Veytias's "Preliminary Objections" that appear in the Veytias's Response.[7]

---

[7] The Court has previously discussed and denied all but one of the Veytias's objections in its Order on Rule 12(b)(1) Motions. Order on Rule 12(b)(1) Mots. 6, n.6. The remaining objection pertains only to the Motion for Summary Judgment. The Veytias object because the

4

### B. Claim for Breach of Guaranty Agreements

Compass contends that the Veytias are liable as guarantors based on five guaranty agreements, the terms of which make the Veytias personally liable for all debts of Vey, including eight promissory notes on which Vey defaulted. Mot. for Summ. J. 4. Compass also seeks to hold Carlos Veytia liable on two guaranties that he alone signed; these guaranties purport to guarantee the debts of Casa, who Compass also alleges is in default. *Id.*

Before the Court determines the scope of the Veytias's liability under any of the guaranty agreements' terms, the Court first considers whether Compass has established the elements required for a breach of guaranty claim in Texas.

#### 1. Required Elements

Pursuant to Texas law, when a plaintiff seeks to bring a breach of contract claim for the breach of a guaranty agreement, the party must prove: "(1) the existence and ownership of the guaranty contract, (2) the performance of the terms of the underlying contract by plaintiff, (3) the occurrence of the condition on which liability is based, and (4) [the] guarantor's failure or refusal to perform the promise." *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 80 (Tex. App.—Texarkana 2008, pet. denied) (citation omitted); *see also Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 378 (Tex. App.—Dallas 2011, no pet. h.).

##### a. Existence and Ownership of the Guaranties

In support of its burden to show the existence and ownership of the guaranty contracts at

---

paragraphs of the Motion for Summary Judgment are not numbered. Resp. ¶ 1. While the rules of form for pleadings do apply to motions, FED. R. CIV. P. 7(b)(2), the requirement pertaining to numbered paragraphs applies only when a party "state[s] its claims or defenses," FED. R. CIV. P. 10(b), such as in an answer or complaint, not in a motion for summary judgment where a party is arguing and defending its claims and defenses.

issue, Compass has submitted the following documents: a) ten guaranty agreements signed by the Veytias,[8] b) the five related promissory notes identifying Vey as the borrower, and c) promissory notes for the three loans (the First Chapel Downs Loan, the Boling Loan, and the Guidance Line Loan [collectively, the Three Loans]), which were not accompanied by specific guaranty agreements.[9] Compass has also submitted two guaranty agreements signed by Carlos Veytia and two related promissory notes identifying Casa as the borrower.[10] Each loan and guaranty lists State National Bank or Compass as either the payee, lender, or creditor.

Additionally, Compass offers the Declaration of Mike Lewis (Lewis), a "Senior Vice President in Asset Recovery Management & Solutions for Compass Bank." *Id.* Ex. A. [hereinafter Lewis Declaration]. Lewis is the bank officer responsible for collecting outstanding payments from Vey and Casa. *Id.* ¶ 3. He attests to Compass's status as successor in interest to State National Bank and authenticates each of the aforementioned promissory notes and guaranty agreements.[11] *Id.* ¶ 5. Given Lewis's role as the officer collecting outstanding balances on the

---

[8] Carlos Veytia and Veronica Veytias each separately signed five Vey-related guaranties.

[9] *See* Mot. for Summ. J. Exs. A-1–3 (relating to the "Manzano/Mesa Hills Loan"); A-4–6 (relating to the "Tierra Humeda Loan"); A-9–11 (relating to the "Mayorga Loan"); A-14–16 (relating to the "Second Chapel Downs Loan"); A-17–19 (relating to the "Consolidated Loan"); A-7, 8, 12 (relating to the Three Loans [the First Chapel Downs, the Boling Loan, and Guidance Line Loan]).

[10] *Id.* Exs. A-21–22 (relating to the Casa Palmira Real Property Loan) and A-23–24 (relating to the Casa Palmira Equipment Loan).

[11] Despite the foregoing, the Veytias argue that Compass has offered no evidence that it is the owner of the guaranties (arguing that Compass has no standing) and that no guaranties exist for the Three Loans. Resp. ¶¶ 34-35. For the reasons stated previously in its Order on Rule 12(b)(1) Motions, the Court rejects these arguments. Order on Rule 12(b)(1) Mots. 10-11, 13-14 (stating that Compass has standing and may bring claims associated with the Three Loans).

accounts in issue and that he has been employed by Compass since 1985, the Court determines that he has personal knowledge of matters described in the Lewis Declaration, that the pertinent material therein would be admissible at trial, and that Lewis is competent to testify. Therefore, the Court concludes that Compass has adequately demonstrated the existence of the guaranties.

### b. Performance on the Promissory Notes by Compass

Lewis asserts that State National Bank (or Compass, in the case of the Consolidated Loan and the Casa Palmira Equipment Loan) performed by "disburs[ing] the loan proceeds" under all the promissory notes at issue. Lewis Decl. ¶¶ 8, 13, 18, 23, 28, 34, 41, 47, 53, 59. The Veytias counter by arguing that Compass failed to perform on the underlying promissory notes for some of the loans. Resp. ¶¶ 37-46.[12]

For example, the Veytias contend that "no loan proceeds were tendered to Vey" on Second Chapel Downs Loan, a loan to Vey for the principal amount of one million dollars. Resp. Ex. M [hereinafter Carlos Veytia Affidavit] ¶ 18; *see also* Resp. Ex. N. ¶ 30 [hereinafter Dunbar Affidavit] (John W. Dunbar (Dunbar) is the Veytias's accounting expert);[13] Mot. for

---

[12] The Veytias also argue that "Compass simply failed to perform" because Compass breached various alleged duties relating to the provision of accurate loan account information and the duty of good faith and fair dealing. Resp. ¶¶ 41-42. The Veytias fail to establish the existence of such duties because they offer no legal authority in support thereof, and they fail to explain how breach of the duties would constitute a failure to perform. *See also* Order on 12(b)(1) Motions, III.B.2. Also, the Veytias contend that Vey and Casa cannot perform on the guaranty agreements because the balances owed are in dispute, therefore "a condition precedent to enforcement of the guaranty has not been satisfied." *Id.* ¶ 44. However, the Veytias do not support their contention that an accurate loan balance is a condition precedent with any legal authority or reasoning, nor do they assert, with particularity, that a condition precedent has not been performed in their pleading as required by Federal Rule of Civil Procedure 9(c). Moreover, their argument is waived by the terms of their guaranties. *Infra* III.B.3.

[13] The full text of the Carlos Veytia Affidavit on this matter is:
Compass claims in its Motion for Summary Judgment that $1,299,000, including

7

Summ. J. ¶ 38, Ex. A-14 (stating the principal amount of the Second Chapel Downs Loan promissory note).

Carlos Veytias's and John Dunbar's affidavits contain nothing more than conclusory statements that are unsubstantiated by evidence in the record[14] and are, consequently, insufficient to establish a genuine dispute of a material fact. *See Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992) (finding that an affidavit that lacked "specific facts," and contained only "conclusory statements" could not raise a genuine issue of material fact). For instance, the affiants provide no indication of what actions Vey took after the promised funds were allegedly not disbursed, or any indication of how or when Vey came to realize that State National Bank

---

        principal and interest and other fees are owed on the Second Chapel Downs Loan. However, no loan proceeds were tendered to Vey Finance, Casa Palmira, Veronica L. Veytia or me. The funding in connection with this loan was taken or otherwise converted by Peterson. Therefore, the Compass loan balance is in dispute.
Carlos Veytia Aff. ¶ 18.

        The full text of the Dunbar Affidavit on this matter is:
I have reviewed the records related to this loan and have not identified the funds being tendered to the Veytias related to this loan. Therefore, it is unclear as to what . . . balance is owed if no funds were obtained by the Veytias. Based on my professional opinion and records that I have reviewed, Compass' asserted account balance is incorrect.
Dunbar Aff. ¶ 30.

[14] The Lewis Declaration offers sufficient proof because, unlike the Veytias's affidavits, it contains factual details such as the dates the agreements were executed, the date of default, and the exact amounts due. Lewis Decl. Manzano/Mesa Hills Loan ¶¶ 6, 9, 10; Tierra Humeda Loan ¶¶ 11, 14, 15; First Chapel Downs Loan ¶¶ 16, 19, 20; Boling Loan ¶¶ 21, 24, 25; Mayorga Loan ¶¶ 26, 29, 30; Guidance Line Loan ¶¶ 31, 35, 37; Second Chapel Downs Loan ¶¶ 38, 42, 43; Consolidated Loan ¶¶ 44, 49, 50; Casa Palmira Property Loan ¶¶ 51, 54, 55; Casa Palmira Equipment Loan ¶¶ 56, 61, 63. Further, other documents in the record support Lewis's assertions. For example, on the issue of performance, the existence of the promissory notes and guaranties lend support to his assertions.

had not disbursed the one million dollar loan.[15] The Court does not expect or require the Veytias to prove a negative, but the Court does expect factual assertions that could corroborate such a claim—otherwise, a party, in these circumstances, could always create a genuine dispute of fact by simply disputing that the bank tendered the loan proceeds.

The conclusory nature of the Veytias's proffered evidence is in stark contrast to that provided by Compass on the Second Chapel Downs Loan.[16] In its Reply, Compass offers the "Declaration of Peter Hickey" [hereinafter Hickey Declaration], "a Senior Internal Auditor for Compass Bank." Reply Ex. K ¶ 2. Hickey contends that the Second Chapel Downs Loan was disbursed in three installments, and he provides the dates, amounts, and the account numbers into which the funds were deposited. *Id.* ¶ 6.[17]

---

[15] The Court takes notice of Carlos Veytias's testimony at the Court's preliminary injunction hearing. *See Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410, (5th Cir. 2010) (stating that a district court "may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom.") (quotation and citation omitted); *Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (upholding a district court's decision to take judicial notice of testimony not submitted with the summary judgment motion). Carlos Veytia, in addition to his responsibilities in the management of Vey, is a certified financial planner, who considers himself to be a "sophisticated businessman." Tr. Prelim. Inj. Hr'g 4:13-24, Aug. 10, 2011, ECF No. 151. A person in his position is unlikely to have overlooked the fact, as he alleges, that one million dollars he secured for his business by promissory note and guaranty agreement was never disbursed to his business's accounts.

[16] To be clear, the Court is not weighing the evidence provided by the Veytias against that provided by Compass. The comparison merely illustrates the distinction between a conclusory and unsubstantiated affidavit, on the one hand, and one which provides adequate detail and is sufficiently supported by other documents so that it can be considered as proper summary judgment proof.

[17] The full text of the Hickey Declaration on this matter is:
The proceeds of the Second Chapel Downs Loan ($1,000,000) were issued by Compass Bank in three installments. The first installment was on March 13, 2008 and was deposited into two different Vey Finance checking accounts. $712,000 was deposited into checking account[,] xxxx5985, and $6,000 was deposited into checking account, xxxx7031, of Vey Finance. The second installment of $55,000 was issued on March 26, 2008 and deposited into checking account xxxx7031 of Vey Finance. The third installment of $227,000 was issued on May 9, 2008. This advance supplemented the purchase of a cashier's check in the amount of

Accordingly, on those loans which the Veytias assert that State National Bank and Compass did not perform, the Court finds that there are no genuine disputes regarding performance because the Veytias's allegations are conclusory, unsubstantiated, and insufficient to create a genuine dispute of material fact.

### c. Occurrence of the Conditions Upon Which Liability is Based: Default

Compass establishes the element of default because, for each loan, Lewis states the principal amount of the loan, the date on which Vey or Casa ceased making payments, and the amount due as of the date of his affidavit. Lewis Decl. ¶¶ 6-64. The principal amounts are substantiated by the promissory notes attached to the Motion for Summary Judgment. As well, the information regarding the date of default is sufficiently specific. Accordingly, the burden shifts to the Veytias to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

The Veytias's affidavits are insufficient to raise a genuine dispute of material fact, despite the Veytias's bald assertions that Vey and Casa are not in default on several of the loans. *See, e.g.*, Carlos Veytia Aff. ¶ 12 (regarding the Manzano/Mesa Hills Loan, Vey "tendered payment of this loan balance in its entirety"); *id.* ¶ 13 (regarding the Tierra Humeda Loan, credits owed to Vey "renders this loan as being current"); *id.* ¶ 14 (regarding the Casa Palmira Real Property Loan "payments have been made to Compass through the registry"); *id.* ¶ 15 (regarding the Mayorga Loan, Vey "tendered payment of this loan balance to Compass in its entirety"). Although Carlos Veytia asserts that Vey "tendered payment" for a given loan "in its entirety," he does not explain the amount of payment, the date payment was made, or offer any documentary

---

$530,190, made payable to Sierra Title Company. The cashier's check was used to purchase real property in the name of Vey Finance.
Hickey Decl. ¶ 6.

evidence in support. At his most descriptive, Carlos Veytia offers that "payment was made in the form of a check" by Vey for the Manzano/Mesa Hills Loan. *Id.* ¶ 12. Given his position as the principal interest holder and manager of Vey, Carlos Veytia is well positioned to know the date, amount, and the check number of each disbursement. Instead, his assertions lack specificity.[18] The Dunbar Affidavit is also conclusory as it relates to the issues of default. For example, Dunbar states that Vey "tendered payment in full" for the Manzano/Mesa Hills Loan, the Tierra Humeda Loan, and the Boling Loan, but he provides no factual details as to each loan. Dunbar Aff. ¶¶ 24-25, 31. Accordingly, the Carlos Veytia Affidavit and the Dunbar affidavit are insufficient to raise a genuine dispute of material fact because they are conclusory and inadequately supported.

Further, the Veytias concede that "the last direct payments [were] made to Compass [by Vey and Casa] in September of 2009." Resp. ¶ 47.[19] However, the terms of all but one of the promissory notes require monthly payments to continue well after September of 2009. Mot. for Summ. J. Exs A-4, A-7, A-8, A-9, A-12, A-14, A-17, A-21, A-23. The Veytias do not explain how Vey and Casa could avoid default, given that they stopped payments prematurely. Moreover, the Consolidated Loan and the Casa Palmira Equipment Loan contain cross-default

---

[18] By way of contrast, Lewis offers specific factual details that are corroborated by the promissory notes. Lewis states the date of default and the amount owed at that time. Lewis Decl. ¶¶ 9, 14, 19, 24, 29, 35, 42, 49, 54, 61. Moreover, Compass provides more detail in its Reply. For example, Compass offers that the funds were never drawn on the check written by Vey for the payment of the Manzano/Mesa Hills Loan because the maker of the check wrote the wrong account number for deposit. Hickey Decl. ¶ 4. In support, Compass provides specific dates, account numbers, detailed amounts, and purports to quote the inscription on the check. *Id.*

[19] The Veytias assert that Vey and Casa stopped payments because of "the uncertainty and dispute[s] related to the actual amounts owed." Resp. ¶ 47. Carlos Veytia explains that Vey and Casa agreed to set up escrow accounts with Compass to receive payment while the dispute was pending; yet, the agreement was never executed. Carlos Veytia Aff. ¶ 10. Moreover, Vey and Casa could have made payments into the registry of the Court to comply with their loan obligations. However, the payments made into the registry came well after the defaults described by Compass. *See* Agreed Order On Mot. for Sale of Real Property, May 31, 2010, ECF No. 14.

provisions. By their terms, a default in one loan constitutes a default in another loan or loans.[20] Mot. for Summ. J. Ex. A-17 ¶ 13, A-23 ¶ 16.

The Veytias's conclusory assertions that they have not defaulted on various loans are insufficient to establish a genuine dispute as to default, particularly given the Veytias's admission that payments were stopped in violation of the terms in the promissory notes.[21] Accordingly, the Court finds that the Carlos Veytia Affidavit and the Dunbar Affidavit are inadequate to raise genuine disputes of material fact on the issue of default by Vey and Casa.

### d. Refusal of Guarantors to Perform

In the Lewis Declaration, Compass offers adequate proof that the Veytias have refused to make payments in their capacities as guarantors, despite Compass's requests. *Id.* ¶¶ 9, 14, 19, 24, 29, 35, 42, 49, 54, 61. For the reasons previously discussed, the Court determines that this proof is sufficient to prove Compass's claim at summary judgment. The Veytias do not contest Compass's proof or argue that this fourth element has not been met. Accordingly, the Court determines that Compass has offered sufficient support of this final element for breach of its guaranty claim.

In sum, the Veytias have not raised a genuine dispute of material fact through their conclusory affidavits regarding Compass's performance or Vey's default on the other promissory

---

[20] The cross-default provisions state "that default under either this Note or any other such note between [Vey and Casa] and [State National Bank and Compass] shall, at [Compass's] option be a default under the other." Mot. for Summ. J. Ex. A-17, A-23 ¶ 16.

[21] While it is possible that Vey and Casa could have paid their debts in full or made other arrangement to avoid default prior to September 2009, the Veytias do not provide dates or any specific information about Vey and Casa's alleged loan payments. Even though the Court construes factual disputes in favor of the Veytias, the Court is not required to engage in speculation or make assumptions with no basis in fact on behalf of the Veytias. *Liquid Air Corp.*, 37 F.3d at 1075 ("resolving actual disputes of material facts in favor of [the] nonmoving party 'is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint . . . . It will not do to 'presume' the missing facts'" (quoting *Lujan*, 497 U.S. at 888)).

12

notes. The Veytias are, therefore, liable to Compass based on the terms of the guaranties. Also, Carlos Veytia's proffered affidavits are insufficient to raise a genuine dispute of material fact as to either Casas's default or Compass's performance on the promissory notes, and he is liable to Compass as a guarantor.[22]

### 2. Terms and Scope of the Veytias's and Carlos Veytias's Liability

Given the Court's determination that Compass may enforce its guaranty agreements with the Veytias, the Court next considers the terms of the guaranties and the scope of the Veytias's liabilities thereunder.[23] Under Texas law, a guaranty is construed in the same manner as any

---

[22] Independently of the reasons stated above, Compass has established the elements necessary to prove its breach of guaranty claim because the Veytias do not challenge the critical elements regarding each of loans subject to the guaranties. In other words, even if the Court were to disregard the critical flaws in the affidavits and base its decision on the Veytias's assertions regarding performance and default, these assertions could not create a genuine dispute precluding Compass from enforcing the terms of its guaranties.

Regarding the Guidance Line Loan, the Veytias only contend that the "balance that Compass asserts it is owed on this loan is incorrect and is in dispute." Carlos Veytia Aff. ¶ 20; Dunbar Aff. ¶ 32. The proper balance due on a loan is not one of the four elements that Compass must prove in order to enforce its guaranty agreements. Similarly, for the Casa Palmira Real Property Loan, the Veytias offer that Casa "has made three $1,500 monthly payments to Compass . . . during the pendency of this litigation." Dunbar Aff. ¶ 19. However, the terms of the Casa Palmira Real Property Loan require "84 monthly consecutive . . . payments . . . of $2,816.83 each." Mot. for Summ. J. Ex A-21. Accordingly, Casa's deficient payments render it in default.

Given Compass's sufficient showing as to each element of proof and the Veytias's failure to challenge those elements regarding the Guidance Line Loan and the Veytias's admissions regarding the Casa Palmira Real Property Loan, Compass has established all of the criteria needed to enforce its guaranty agreements. Compass may invoke the terms of the guaranty agreements it has with the Veytias due to the undisputed performance by Compass and the undisputed default by Vey on the Guidance Line Loan. Likewise, Carlos Veytia is liable for the debts of Casa due to Casa's default on the Casa Palmira Real Property Loan pursuant to the terms of his guaranties.

[23] Although the terms of each of the guaranties are similar and repeat much of the same language, they are not identical. Given that the agreements are not identical, there is an inherent possibility of conflicting terms. However, the parties have not raised concerns over which guaranty's terms to apply. Given the lack of briefing on this matter, the Court applies the terms from the latest-in-time guaranty agreements—in this case, the guaranties associated with the Consolidated Loan and the Casa Palmira Equipment Loan. The Court does so given the language in the guaranty agreements which relates to all previous and future indebtedness of Vey and

other contract, such that words are given their plain, common, or generally accepted meaning unless the agreement indicates otherwise. *Mid-South Telecomms. Co. v. Best*, 184 S.W.3d 386, 390-91 (Tex. App.—Austin 2006, no pet.) (citations omitted). Additionally, a guaranty agreement is construed strictly in favor of the guarantor. *See Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex. 1978) (citations omitted); *see also Material P'ship, Inc. v. Ventura*, 102 S.W.3d 252, 258 (Tex. App.—Houston [14th Dist.] 2003, pet. denied(repeating the same and outlining general propositions of Texas contractual interpretation).

The terms of the Consolidated Loan guaranty and the Casa Palmira Equipment Loan guaranty are, in relevant part, identical and will be analyzed concurrently.[24] Under those terms, "each Guarantor jointly and severally . . . unconditionally guarantees to [Compass] . . . (i) the due and punctual payment of the Guaranteed Debt . . . ; and (ii) the payment and performance of all other obligations *now or hereafter owed* by [Vey and Casa] to [Compass]." Mot. for Summ. J. Ex. A-18–19 & A-24 at ¶¶ 1.01 (emphasis added). The term "Guaranteed Debt" includes "any and all other indebtedness, liabilities, obligations, and duties of every kind and character of [Vey and Casa] to [Compass], whether *now or hereafter existing, or arising*." *Id.* ¶ 1.02(c) (emphasis added).

The plain meaning of the phrase "now or hereafter" extends the obligations of the Veytias to all of the debts associated with the promissory notes at issue in this case, not just to the debt from the promissory note that was signed in connection with the guaranty. The other promissory notes were obligations of Vey that pre-existed, or in the terms of the guaranties, were "now

---

Casa.

[24] The same terms appear in the Second Chapel Downs Loan. *See* Mot. for Summ. J. 23. Additionally, the Consolidated Loan and the Casa Palmira Equipment Loan were originated between Compass and the Veytias and Carlos Veytia, so there are no issues as to the successor in interest.

owed" or "existing" when the guaranties were executed. Similarly, when the defaults on the various promissory notes occurred, those became obligations "hereafter owed" or "indebtedness ... hereafter ... arising."[25]

The terms of the Consolidated Loan and the Casa Palmira Equipment Loan, by their plain meaning, render the Veytias liable for all of the debts of Vey; and they also obligate Carlos Veytia to pay for the debts of Casa, including those debts associated with prior promissory notes and guaranties.[26]

### 3. Amount of Debts Owed to Compass

Compass contends that, as of September 30, 2011, it was owed $9,631,441.76 by the Veytias for the debts of Vey and $489,797.24 by Carlos Veytia for the debts of Casa. Mot. for Summ. J. ¶ 32 (providing totals and an itemized summary); *see also* Lewis Decl. ¶¶ 10, 15, 20, 25, 30, 36, 43, 50, 55, 62 (providing amounts for each loan). The Veytias assert that Vey's and Casa's "credits, payments, funds in the Registry of the Court, and loan payoffs offset the amount of monthly payments owed to Compass from September 2009 to the present." Dunbar Aff. ¶ 20; Resp. ¶¶ 47-56. However, Compass contends that the Veytias have waived their rights to assert that their obligations should be reduced or partially discharged.[27] Reply 9-12.

---

[25] Under Texas law, "continuing guaranties," such as those at issue here are "not confined to a particular transaction, but rather contemplate[] a future course of dealing." *FDIC v. Woolard*, 889 F.2d 1477, 1479 (5th Cir. 1989). *See also Beal Bank, SSB v. Biggers*, 112 S.W.3d 187, 192 (Tex. App.—Houston [1st Dist] 2007, no pet.) ("A continuing guaranty ... applies to other liabilities as they accrue.").

[26] Texas courts interpret a guaranty literally, including one purporting to cover "any indebtedness ... whether now existing or hereafter arising" as guaranteeing a subsequent loan agreement, even when the subsequent debt was incurred with a forged signature. *Reece*, 566 S.W.2d at 297.

[27] Additionally, Compass reprises its standing arguments, contending that only Vey and Casa have the right to challenge the amount owed by Vey and Casa under the guaranty agreements. Reply 11. This argument is misplaced because, as signatories to the guaranty agreements, the Veytias do not lack standing to challenge terms of the provisions of the guaranty

After reviewing the guaranties, the Court concludes that the Veytias have waived their ability to argue that "credits, payments, funds in the Registry of the Court, and loan payoffs" by Vey and Casa "offset" the Guaranteed Debt and the amounts the Veytias owe. In the Consolidated Loan and the Casa Palmira Equipment Loan, the Veytias and Carlos Veytia stipulate that the Guaranteed Debt "shall not be reduced, discharged, or released because or by reason of any existing or future offset, claim, or defense of [Vey or Casa]." Mot. for Summ. J. Ex. A-18–19 & A-24 at ¶¶ 2.[28] The Court interprets these terms based upon their plain meaning and, where possible, construes the terms favorably to the Veytias. *Best*, 184 S.W.3d at 390-91; *Reece*, 566 S.W.2d at 297. Applying these rules, the Court determines that the terms of the guaranties are unequivocal in foreclosing the Veytias from seeking to reduce the amount they

---

agreements, including the amounts that *they—the Veytias*—owe thereunder. *See Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214, 216-17 (describing standing as a preliminary matter that requires a showing of privity whenever contracts are concerned).

[28] Under the heading, "Events and Circumstances Not Reducing or Discharging Guarantor's Obligations," the Consolidated Loan and Casa Palmira Equipment Loan guaranties state:
> [The] Guaranteed Debt . . . and the liabilities and obligations of Guarantor to [Compass] . . . shall not be reduced, discharged, or released because or by reason of any existing or future offset, claim, or defense of [Vey or Casa], or any other party, against [Compass] or against payment of the Guaranteed Debt, whether such offset, claim, or defense arises in connection with the Guaranteed Debt (or the transactions creating the Guaranteed Debt) or otherwise. Guarantor hereby consents [that] . . . Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced, or adversely affected by any of the following, and waives any common law, equitable, statutory, or other rights . . . which Guarantor might otherwise have as a result of any of the following:
>
> The invalidity, illegality, or unenforceability of all or any part of the Guaranteed Debt, or any document or agreement executed in connection with the Guaranteed Debt, for any reason whatsoever, including without limitation the fact that (a) the Guaranteed Debt, or any part thereof, exceeds the amount permitted by law, . . . the Borrower has valid defenses, claims, or offsets (whether at law, in equity, or by agreement) which render the Guaranteed Debt wholly or partially uncollectible from Borrower . . . .

Mot. for Summ. J. Ex. A-18 & A-24 at ¶¶ 2-2.04(e).

owe based on their arguments that some of Vey's and Casa's loan amounts are in dispute and that their responsibility as guarantors should be proportionately reduced.[29] In fact, Texas courts find waiver when agreements are similarly clear. *See, e.g., LaSalle Bank Nat. Ass'n v. Sleutel*, 289 F.3d 837, 842 (5th Cir. 2002) (holding that a guarantor "could waive any right of offset he may have under" the Texas anti-deficiency judgment statute); *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 223 (Tex. 1992) (stating that "the parties to a guaranty may normally waive such a defense," in reference to the defense of impairment of collateral).[30] Additionally, Texas law does not limit the liability of the guarantor to the liability of the principal, where, as here, the terms of the guaranty agreement "expressly sets out more extensive liability." *Pham v. Mongiello*, 58 S.W.3d 284, 288 (Tex. App.–Austin 2001, pet denied) (citation omitted); *see also Material P'ship, Inc.*, 102 S.W.3d at 265 ("A guarantor's liability on a debt is measured by the principal's liability unless a more extensive or more limited liability is expressly set forth in the guaranty agreement.").

Notably, the Veytias do not argue that the terms of the waiver itself are ambiguous. Instead, they argue that enforcing the waivers "violates the public trust and public policy," given the Veytias's allegations that the underlying debts were created by criminal misconduct and

---

[29] Additionally, for the reasons stated in section III.B.1.b&c of this order, the Court determines that the Veytias and Carlos Veytia have not offered evidence upon which the Court could properly determine that there is dispute of material fact as to the proper loan amounts.

[30] *See also In Re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (finding contractual waiver of the right to jury trial enforceable and listing other waivable rights); *FDIC v. Nobles*, 901 F.2d 477, 480 (5th Cir. 1990) (holding that a guarantor was precluded from arguing that the FDIC breached its duty to perfect a security interest due to the explicit terms of the guaranty); *FDIC v. Coleman*, 795 S.W.2d 706, 710 (Tex. 1990) (upholding terms of a guaranty where guarantors "expressly consented in their guaranties to the creditor's complete discretion in exercising its rights in the collateral."); *First Gibraltar Bank v. Bradley*, 1996 WL 556852, at *7-8 (5th Cir. Sept. 10, 1996) (quoting terms similar to the present guaranties, concluding that "[t]his language speaks for itself," then upholding waiver).

negligence on the part of Compass.[31] Resp. ¶ 61. Specifically, the Veytias argue that "the implied duty of good faith and fair dealing" cannot be waived. Resp. ¶ 62.[32] However, as the Court has already determined, the Veytias's lack standing to argue that Compass breached a duty of good faith to Vey. Order on 12(b)(1) Mots. 8-9. The criminal and malicious conduct alleged by the Veytias's has no relationship to the guaranty agreements; it only relates to the promissory notes and accounts of Vey and Casa. Moreover, the Veytias's do not cite to any published Texas legal authority suggesting that they, *as guarantors*, are owed a duty of good faith in the context of the facts of this case. Further, the Veytias do not cite to any published legal authority suggesting that the Court should not apply the terms of the waiver. Accordingly, the Court will enforce the waivers in the guaranty agreements. Therefore, the Veytias and Carlos Veytia are liable for the full amounts of the debts of Vey and Casa respectively, and the Veytias may not now seek any offsets or reductions.

C.     Attorney's Fees

Finally, the Court concludes that Compass may recover attorney's fees based upon the terms in the Consolidated Loan and the Casa Palimira Equipment Loan guaranties. Under Texas law, contracts between the parties requiring payment of attorney's fees are enforceable. *Akin,*

---

[31] The Veytias invite the Court to suspect that the actions of a former State National Bank employee who was convicted of bank fraud resulted in loan balances that exceed the true indebtedness of Vey and Casa. Resp. ¶ 8, 61. However, the Veytias offer nothing other than the conclusory statements of Carlos Veytia and the generic opinions of Dunbar to support their conclusion that Vey's and Casa's loan balances were affected. Carlos Veytia Aff. ¶¶ 7, 17, 21; Dunbar Aff. ¶¶ 17, 22. Even assuming that their speculation is accurate, the Veytias's position as guarantors does not afford them the right to challenge the indebtedness of Vey and Casa in this manner. Order on 12(b)(1) Mots. 6-9. Moreover, their accusation is immaterial to the elements of Compass's claim. Finally, the evidence put forward by the Veytias only supports the general conclusion that a Compass employee was engaged in fraud while working at Compass. There is nothing more than Carlos Veytias's conclusory accusations to tie the employee to the specific allegation that the malfeasance caused harm to Vey and Casa. These mere accusations are insufficient to support the Veytias's appeal to public policy.

[32] *See also* Order on 12(b)(1) Motions, III.B.2.

*Gump, Strauss, Hauer & Feld, L.L.P. v. Nat. Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009). Both of the guaranties provide that the guarantors are liable for "[a]ll costs, expenses, and fees, including but not limited to court costs and attorneys' fees, arising in connection with the collection of any or all amounts, indebtedness, obligations, and liabilities of [Vey and Casa] to [Compass]." Mot. for Summ. J. Ex. A-18–19 & A-24 at ¶¶ 1.02(d). Therefore, the Veytias are liable to Compass for all of the attorney's fees and court costs incurred in Compass's efforts to collect on the debts of Vey; Carlos Veytia is liable for Compass's costs and attorney's fees associated with pursuing the debts of Casa. Similarly, the guaranties provide that the Veytias and Carlos Veytia are liable for the costs and attorney's fees incurred in Compass's efforts to collect on the guaranty agreements. *Id.* ¶¶ 1.06.[33] Accordingly, the Veytias are liable for the attorney's fees and costs Compass incurred while enforcing the guaranty agreements related to Vey's debts; Carlos Veytias is liable for the costs and attorney's fees Compass incurred while enforcing the guaranty agreements related to Casa's debts. Given that the parties have not yet submitted evidence of costs and attorney's fees, the Court will reserve entry of judgment on this claim.

## IV. CONCLUSION

Given Compass's offers of proof and the Veytias's inability to raise any genuine disputes of material fact, the Court grants summary judgment on behalf of Compass and reserves entry of judgment on the amount of the attorney's fees to be awarded.

Accordingly, **IT IS ORDERED** that Plaintiff Compass Bank's "Motion for Summary Judgment Against Defendants Carlos E. Veytia and Veronica L. Veytia" (ECF No. 147) is **GRANTED.**

---

[33] Specifically, the guaranties state "that should [the Guarantor] breach or fail to timely perform any provision of this Guaranty Agreement, Guarantor shall . . . pay [Compass] all costs and expenses (including court costs and reasonable attorneys' fees) incurred by Creditor in the enforcement" of the guaranties. Mot. for Summ. J. Ex. A-18–19 & A-24 at ¶¶ 1.06.

IT IS FURTHER ORDERED that **Compass Bank shall have and recover $9,631,441.76 from Carlos E. Veytia and Veronica L. Veytia**, jointly and severally, in addition to whatever interest and fees have accrued in accordance with the terms of the loans and guaranties since September 30, 2011, plus post-judgment interest at the applicable statutory rates or as allowed under the law.

IT IS FURTHER ORDERED that **Compass Bank shall have and recover $489,797.24 from Carlos E. Veytia**, in addition to whatever interest and fees have accrued in accordance with the terms of the loans and guaranties since September 30, 2011, plus post-judgment interest at the applicable statutory rates or as allowed under the law.

IT IS FURTHER ORDERED that Compass Bank will **FILE** a motion for attorney's fees **with supporting evidence** by no later than **December 14, 2011 at 5:00 p.m. (MST)**.

IT IS FURTHER ORDERED that Carlos E. Veytia and Veronica L. Veytia file any appropriate response by no later than **December 21, 2011 at 5:00 p.m (MST)**.

FINALLY, IT IS FURTHER ORDERED that both parties may submit a **Proposed Final Judgment**, consistent with the Court's ruling, that they would wish the Court to consider for entry by no later than **December 21, 2011 at 5:00 p.m. (MST)**.

SIGNED this 8th day of December, 2011.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE