IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| COMPASS BANK, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | EP-11-CV-228-PRM |
| | § | |
| CARLOS E. VEYTIA and VERONICA L. | § | |
| VEYTIA, | § | |
|     Defendants. | § | |

## ORDER AWARDING ATTORNEYS' FEES & COSTS

On this day, the Court considered Compass Bank's (Compass) "Motion for Attorney's Fees" (ECF No. 191) [hereinafter Motion], filed on December 14, 2011; Compass's "Supplement to its Motion for Attorney's Fees" (ECF No. 192) [hereinafter First Supplement], filed December 16, 2011; Carlos E. Veytia and Veronica L. Veytia's (the Veytias) "Response to Compass Bank's Motion for Attorney's Fees" (ECF No. 194) [hereinafter Response], filed on December 21, 2011; and Compass's "Second Supplement to its Motion for Attorney's Fees" (ECF No. 203) [hereinafter Second Supplement], filed on February 2, 2012 in the above-captioned cause. After due consideration, the Court is of the opinion that the Motion should be granted in part for the reasons that follow.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Compass initiated this suit against the Veytias and Vey Finance, LLC (Vey) on April 12, 2010. Original Compl., ECF No. 1. Thereafter, Compass amended its original complaint and named additional defendants, including Casa Palmira, LP (Casa) and third-party defendants Octavio Maese; Ocho Finance, LLC; and OMC Services, LP (Third-Party Defendants). Second Am. Compl. & Original Third-Party Compl., Aug. 17, 2010, ECF No. 31. Therein, Compass alleged that the Veytias are liable to Compass because the Veytias personally guaranteed a series

of promissory notes upon which the principal borrowers had defaulted. *Id.* ¶¶ 55-81. The principal borrowers were Vey and Casa. *Id.* The Veytias acted as the principal interest holders and were the managers of Vey and Casa, two entities that the Veytias used to operate a secondary mortgage finance business. *Id.*

By August 2, 2011, the Court had either dismissed or severed all of the defendants, except for the Veytias, due to Compass's failure to state a legally cognizable claim[1] or the defendants' entry into bankruptcy protection.[2] On December 5, 2011, the Court dismissed all of the Veytias's counterclaims after determining that the Veytias lack standing to bring such counterclaims against Compass. Mem. Op. & Order on Rule 12(b)(1) Mots. 6-9, ECF No. 188. Therefore, when the Court began the bench trial in this matter on December 6, 2011, Compass and the Veytias were the only parties in this suit and only Compass's claims for breach of guaranty agreements and attorneys' fees were before the Court.

On December 7, 2011, the Court granted summary judgment in favor of Compass by Text Order. The following day, the Court entered its "Memorandum Opinion and Order Granting Summary Judgment" (ECF No. 190) [hereinafter Summary Judgment Order], wherein the Court awarded judgment in favor of Compass against the Veytias for breach of certain guaranty agreements. The Court awarded[3] Compass "$9,631,441.76 from Carlos E. Veytia and

---

[1] Compass's claims against the Third-Party Defendants, all parties who never entered an appearance, were dismissed by the Court for failure to state a claim. Order Denying Third-Party Pl.'s Mot. for Default J., July 1, 2011, ECF No. 118.

[2] *See* Order Severing Defs., June 1, 2011, ECF No. 103 (explaining that the suit against Vey would be stayed due to Vey's entry into bankruptcy and creating the above-captioned cause in order for the remaining parties to pursue their claims); *see* Order Staying & Severing Cause, Aug. 2, 2011, ECF No. 126 (staying the claims against Casa due to Casa's entry into bankruptcy and severing Casa from the above-captioned cause).

[3] Due to ambiguities in calculating the penalties and interest involved in the various loans and because some of the attorneys' fees had been added to loan balances, the Court provided the parties an opportunity to file proposed orders of final judgment. Summ. J. Order 20.

Veronica L. Veytia, jointly and severally," on their guaranties of Vey's debts. Summ. J. Order 20. Additionally, the Court awarded Compass "$489,797.24 from Carlos E. Veytia," on his guaranties of Casa's debts. *Id.* However, in its Summary Judgment Order, the Court declined to determine the amount of attorneys' fees it would award to Compass; instead, the Court ordered Compass to file a motion for attorneys' fees, with supporting evidence. *Id.*

In its Motion, Compass seeks $1,353,573.31 in attorneys' fees from the Veytias and, separately, an additional $136,963.72 from Carlos Veytia. Mot. 8. The Veytias respond by arguing that a reasonable award of attorneys' fees "should not exceed $250,000." Resp. ¶ 14.

## II.   LEGAL STANDARD

In Texas,[4] when a party recovers for breach of a contract, such as a guaranty agreement,[5] "an award of reasonable fees is mandatory, as long as there is proof of reasonable fees." *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002). However, "[t]he amount of reasonable fees . . . is discretionary." *Fluorine on Call, Ltd., v. Flourogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004) (applying Texas law).

"The determination of a fees award is a two-step process." *Jimenez v. Wood Cnty, Tex.*, 621 F.3d 372, 379 (5th Cir. 2010) (citation omitted). First, a district court must determine the "lodestar." *Id.*; *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2002) (applying Texas law). In the second step, where courts determine whether to deviate from the lodestar amount, courts applying Texas law should consider the eight "*Arthur Andersen*

---

[4] The Court bases its jurisdiction in this case on diversity of the parties and Compass prevailed on its breach of guaranty claims pursuant to Texas law. Summ. J. Order 5. Consequently, Texas law governs the award of attorneys' fees in the present case. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002) (holding that "[s]tate law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision").

[5] In Texas law, guaranty agreements are treated "just like any other contract." *Mid-South Telecomms. Co. v. Best*, 184 S.W.3d 386, 390-91 (Tex. App.—Austin 2006, no pet.).

3

factors."[6] *Fluorine*, 380 F.3d at 867 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997)). In making its determination, the Court "may take judicial notice of reasonable and customary fees, along with the case file." *Id.* at 866-67. "As a general rule, the party seeking to recover attorneys' fees carries the burden of proof." *Stewart Title Guar. Co., v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

### III. ANALYSIS

Before proceeding with the its calculation of reasonable attorneys' fees, the Court will first analyze the attorneys' fees calculations proposed by Compass and the Veytias.

#### A. Compass's Preferred Method of Calculating Attorneys' Fees

Compass's calculation of attorneys' fees leads to an unreasonable result. Compass asserts that it has incurred $830,056.08 in attorneys' fees in this litigation. Mot. 6. However, Compass seeks to recover 15% of the value of two of the ten loans at issue in this case, plus a sum equal to the prorated amount of its actual expenditures on attorneys' fees for the remaining eight loans. Mot. 3-8. In support of this method, Compass argues that the terms of the two promissory notes explicitly provide that 15% is a reasonable fee and that, under Texas law, such contractual provisions are presumptively reasonable. Mot. 3-5.[7]

---

[6] In *Arthur Andersen*, the Texas Supreme Court adopted the factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Northwinds Abatement, Inc. v. Empl'rs Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001). In fact, even when applying state law, courts in the Fifth Circuit may look to federal law for guidance as to the lodestar calculation and the application of the factors justifying adjustment to the lodestar. *See, e.g., id.* (discussing recovery of attorney's fees under the Texas Insurance Code, but drawing guidance from *Romaguera v. Gegenheimer*, 162 F.3d 893, 895 (5th Cir. 1998) (discussing the recovery of fees pursuant to Federal Rule of Civil Procedure 54) and quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (analyzing the recovery of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. 1988)).

[7] In support of its argument, Compass quotes from the two promissory notes and cites *O'Kehie v. Harris Leasing Co.*, 80 S.W.3d 316, 319 (Tex. App.—Texarkana 2002, no pet.); *Kuper v.*

4

However, the mere presumption of reasonableness is not dispositive, where, as here, a lesser amount is reasonable. *O'Kehie*, 80 S.W.3d at 319; *see also Northwinds Abatement, Inc. v. Empl'rs Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001) (rejecting the argument that a contractually based contingency fee arrangement precluded a jury award that was based on an hourly rate). After certain deductions, Compass calculates that 15% of the outstanding debt on the two loans results in $942,682.14 of reasonable attorneys' fees for those two loans. Mot. 8. It seeks a total of $684,818.61 for the eight remaining loans. *Id.* at 7-8. In total, Compass argues that $1,490,537.03 is a reasonable award of attorneys' fees *Id.*

Such a calculation leads to an unreasonable result of $660,480.95 above the amount Compass was billed, an increase of almost 80%. Moreover, Compass has not offered evidence that it engaged in more work to collect on the two loans. Instead, Compass argues that "the legal services rendered with respect to the collection of each loan [are] inextricably intertwined with the legal services rendered with respect to the collection of every other loan in this case." Mot. 7. The Court, mindful that "the requested fees must bear a reasonable relationship to the amount in controversy or to the complexity of the case," *Northwinds*, 258 F.3d at 354 (citation omitted), concludes that the contractual term of 15% distorts the reasonable amount.

### B.   The Veytias's Calculation of Attorneys' Fees

The Veytias assert that $250,000 is a reasonable amount of fees, but they contend that the Court should reduce that amount by the $145,237 that Compass has already incorporated into the debt on one of Vey's loans, for a total award of $104,763. Resp. 6. The Veytias do not explain how they arrive at the $250,000 figure. However, they argue that rates of $225 hourly for

---

*Schmidt*, 338 S.W.2d 948, 950 (Tex. 1960); *Int'l Shelters, Inc., v. Corpus Christi State Nat. Bank*, 475 S.W.2d 334, 337 (Tex. Civ. App. 1971).

partners and $200 hourly for associates are reasonable local standards.[8] *Id.* Further, the Veytias argue that their attorney has invoiced a total of 1,406.84 hours (1,267.81 hours fewer than the lawyers for Compass) and billed a total of $215,968.81. Resp. 5; *see* Second Supp. Ex. B (asserting that Compass's lawyers worked a total of 2,674.65 hours).

The Veytias's calculation is flawed for various reasons. First, the Court notes that the Veytias have not included any information pertaining to the hours spent on this case by defense attorneys other than Rene Ordoñez and his law firm.[9] Second, the Veytias appear to have provided incomplete billing information for the fees charged by Rene Ordoñez and his law firm. The average hourly rate billed to the Veytias in this case is $153.52.[10] However, in light of Attorney Ordoñez's hourly rate of $225, and the hourly rate for his associates of $150, Resp. Ex. A at 2, such a low average hourly rate indicates that some information supplied to the Court may be less than complete. Given the extensive record in this case and for the reasons stated in more detail below, the court concludes that $250,000 is an unreasonably low sum for attorneys' fees in this case.

C. **The Court's Calculation**

In keeping with Fifth Circuit precedent and Texas law, the Court's determination of reasonable attorneys' fees begins by calculating the lodestar. The lodestar is comprised of "the

---

[8] The Veytias offer no evidence of reasonable fees for work performed by paralegals.

[9] The Court is mindful that other attorneys have participated in this case on behalf of other defendants, whose time is not necessarily reflected in Attorney Ordoñez's accounting, including attorney Corey Haugland and his law firm, on behalf of Vey. Compass must respond to each defendant in this case. Therefore, the measure of hours incurred by just one defendant is an incomplete guide as to the reasonable amount of time required by the plaintiff to respond to each of the defendants.

[10] Calculated by dividing the total amount billed to the Veytias, $215,968.81, by the total hours reported by Attorney Ordoñez, 1,406.84.

6

number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez v. Wood Cnty, Tex.*, 621 F.3d 372, 379 (5th Cir. 2010).

### 1. Lodestar

#### a. Number of Hours

As a starting point, the Court looks to the amount of hours that Compass claims to have reasonably expended. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (beginning its analysis with the claimant's billing records). Under Texas law, "if any attorneys' fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006); *see also Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (holding that a party need not segregate fees for defending certain counterclaims). Such unrecoverable fees include some types of paralegal work because "[p]aralegal work can only be recovered as attorneys' fees if the work is legal rather than clerical." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (applying Texas law). Similarly, "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Jimenez*, 621 F.3d at 379-80 (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

Following the Court's "Order to Supplement Motion for Attorneys' Fees" (ECF No. 202) [hereinafter Order to Supplement], filed January 30, 2012, Compass segregated its non-recoverable hours. Second Supp. Ex. B. In so doing, Compass subtracted the hours it expended pursuing unsuccessful claims against the Third-Party Defendants and the hours paralegals expended on clerical tasks. Second Supp. 3. After segregating what it considers to be its

unrecoverable hours,[11] Compass claims 2,674.65 hours as the total amount of hours that it reasonably expended and for which it is entitled to recover. Second Supp. 3, Ex. B.

Despite the Veytias's lack of objection to the Second Supplement, the Court's own review of the record demonstrates that even Compass's segregated hourly total is excessive. Compass provides the Court and the Veytias with 221 pages of billing invoices containing frequent redactions made so that "attorney-client communications and work product are not revealed." First Supp. 2, Ex. A. The redactions prevent the reader from determining whether the redacted entries are themselves for reasonable work or whether they represent excessive or duplicative work—in short, many of the redacted entries are inadequate to aid the Court in making the determinations required by the law. *See Jimenez*, 621 F.3d at 379-80 (excluding all time that is excessive, duplicative, or inadequately documented). After reviewing the redacted documents and based on the Court's familiarity with this case, the Court concludes that 20% of the billing records are too heavily redacted for the Court to determine that the hours related to those entries have been reasonably expended.[12]

Therefore, the Court will reduce Compass's claim of hours expended by 20%.[13] Further, the Court will subtract the 2.5 hours billed to Compass for work done by a law clerk.[14]

---

[11] The Court afforded the Veytias an opportunity to respond to Compass's Second Supplement. Order to Supp. 4. However, the Veytias have not done so and the Court's deadline has passed. Accordingly, the Veytias have not contested the amount of Compass's segregation.

[12] Some entries are entirely redacted, except for the attorney's name. First Supp. Ex. A at 70. Others are almost entirely redacted, showing entries such as: "Review ▓▓▓▓▓▓ ▓▓▓▓-Sarah P. Santos." *Id.* Ex. A at 72. Other entries appear with only a single name or word redacted. *Id.* Ex. A at 83. The Court notes that Compass did not submit unredacted documents for *in camera* review or attempt a thorough explanation of its redactions.

[13] Other Courts have similarly reduced total hours by a percentage. *See, e.g., Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 801 (5th Cir. 2006) (upholding a district court's 10% reduction for vagueness and duplicative work); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (imposing a "ten percent reduction for inadequate documentation of the hours and fees requested"); *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D.

Therefore, the Court determines that Compass has reasonably expended and accounted for 1,108.96 partner-hours, 793.4 associate-hours, and 235.36 paralegal-hours, determined by subtracting 20% from each category of Compass's segregated hours, for a total of 2,137.72 hours. *See* Second Supp. Ex. B. (providing total hours for partners, associates, and paralegals). This total figure is reasonable given that this case has been more time consuming[15] than the average case dealing with collection on a guaranty agreement.

### b.   Hourly Rates

"Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (quotations and citation omitted). However, "the attorneys' fees calculus is a fact-intensive one and its character varies from case to case." *Id.* at 281.

---

Tex. 2009) (Rosenthal, J.) (asserting that "[r]edacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended").

[14] The Court finds nothing in the record to support the notion that a law clerk, whose credentials are not provided to the Court, performed work other than clerical tasks.

[15] For example, the parties proceeded far enough with negotiations to announce settlement to the Court. Order Relative to Entry of J., Feb. 25, 2011, ECF No. 69. After settlement collapsed, following a request for a continuance, and in light of unresolved discovery disputes, the Court then vacated the original trial date twenty-three days before trial was set to commence. Order Vacating Trial Date, April 20, 2011, ECF No. 85. Subsequently, Vey entered into bankruptcy protection, staying the case. ECF No. 95. The parties then contested whether the case should be stayed as to the Veytias as well. Order Severing Defs., June 1, 2011, ECF No. 103 (concluding that the case should proceed against non-bankrupt defendants). Thereafter, the parties recommenced trial preparations and a bench trial began before the Court granted summary judgment. Further, the Veytias played a prominent role in prolonging this litigation and making it particularly contentious by, as one example, objecting that Compass failed to number the paragraphs of its summary judgment motion. Summ. J. Order 4 n.7. The Veytias "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [Compass] in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1988) (plurality opinion).

Compass argues that its attorneys, primarily based in Austin and San Antonio, billed at reasonable rates for the type of work done in this case. Mot. 6, Ex. A. ¶ 13. Partners at those firms billed at rates ranging from $200-$465.[16]

The Veytias argue that an hourly rate of $225 for partners and $200 for associates is customary and reasonable in "West Texas, El Paso Division, for the type of litigation in this cause." Resp. 6. In support, the Veytias offer that their primary attorney in this matter, Rene Ordoñez, billed at $225 hourly. *Id.* For further support, the Veytias look to Compass's El Paso-based local counsel at the Harbour Law Firm who charged $200 hourly. *Id.*

The divergence in the parties' requested hourly rates appears, in part, to be determined by the scope of the "relevant legal community."[17] The Veytias suggest that the relevant community should be limited to El Paso. Resp. 6. Compass impliedly argues for a more expansive scope,

---

[16] Specifically, at the Harbour Law Firm, P.C., located in El Paso, Texas, the partner billed $200 hourly. Second Supp. Ex. C at 13. At the law firm of Reid Davis, whose attorneys in this matter were based in Austin, Texas, the hourly rates in this case are: $375 for senior partners, $305 for junior partners, $225 for associates, and $110 for paralegals. *Id.* Ex. C at 2. At the Davis Group, P.C., located in San Antonio, Texas, the hourly rates in this case are the same, except that partners (distinguished from senior and junior partners) bill hourly at $300, while junior partners bill at $275. *Id.* Ex. C at 5. For the firm of Jackson Walker, L.L.P., whose attorneys in this case were based in San Antonio and Austin, the hourly rates in this case are: $455-465 for partners, $330 for associates, and $150-$175 for paralegals. *Id.* Ex. C at 5.

[17] Neither party proffered any legal support for its view of the scope of the relevant legal community. Courts have adopted varying approaches, at times concluding that the "'relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits.'" *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. District Courts Trying Criminal Cases*, 148 F.3d 554, 558 (5th Cir. 1998) (criticizing the appellant because he "made no effort to show what his services are worth in Houston"). Still, other courts have taken a district-wide approach. *See Thompson v. Connick*, 553 F.3d 836, 868 (5th Cir. 2008) (abrogated on other grounds) (upholding a district court's determination of the hourly rate that was based "on the fees generally awarded in the Eastern District of Louisiana"). Others take a regional approach. *See In re Estate of Vrana*, 335 S.W.3d 322, 329-30 (Tex.App.—San Antonio 2010, pet. denied) (upholding an award of attorney's fees from Jim Wells County Court in which the rates were set by the firm of Bracewell & Giuliani LLP, in Houston, even though the rates were "'somewhat' higher than the standard rate charged by attorneys working in the specific locality of Jim Wells County").

one that extends to the whole of the Western District of Texas. Mot. 6, Ex. A at 13; Second Supp. Ex. C.

Under the present circumstances, the Court concludes that Compass's requested hourly rate for some of the partners is higher than what is reasonable for the type of work involved in this litigation under the circumstances. However, the rate suggested by the Veytias is too low to take into account the sophisticated nature and complexity of the various transactions at the heart of this litigation and fails to consider the nature of the relationship of the parties and the relationship between Compass and its chosen counsel. Therefore, the Court will calculate the lodestar based on a rate of $325 for partners, $225 for associates, and $110 for paralegals.

While these rates may arguably be at the high-end of the spectrum for the El Paso legal community, they are well within the spectrum for the types of legal work at issue in this case[18] in the Western District of Texas, particularly in major metropolitan areas, such as Austin and San Antonio. Mot. 7, Ex. A; First Supp. Ex. A.; Second Supp. Exs. A, C.

      c.    **Lodestar Calculation**

In the final step of the lodestar calculation, the Court multiplies the reasonable hourly rate by the number of hours reasonably expended. *Jimenez v. Wood Cnty, Tex.*, 621 F.3d 372, 379 (5th Cir. 2010). Therefore, the Court multiplies 1,108.96 hours by the rate of $325 for partners;

---

[18] The type of litigation at issue in this case goes far beyond simple enforcement of guaranty agreements *See, e.g.*, Mot. ¶ 7 (asserting "this case is not a typical collection matter"); Resp. ¶ 13 (referring to "complex commercial litigation"). Rather, to pursue this litigation effectively, Compass's attorneys needed to have an understanding of the secondary mortgage financing business, the effects of two of the parties' entry into bankruptcy during litigation, of both state law and federal procedure, and be capable of addressing numerous counterclaims. Additionally, Compass's state-wide presence and its ongoing relationship with counsel from outside of El Paso (but who are still within the Court's judicial district), Mot. 7, justify the rate set by the Court so that Compass can avoid the difficulties of maintaining trial counsel in each city that it operates. The Veytias ran a sophisticated business and in so doing, contracted with Compass, a large bank with branches in many different states and in all of the major Texas cities. Therefore, the Veytias cannot be surprised by Compass's use of non-El Paso attorneys.

11

793.4 hours by the rate of $225 for associates; and 235.36 hours by the rate of $110 for paralegals. The result is a total of $564,816.60 for the lodestar.

### 2. Adjustment to the Lodestar

#### a. *Arthur Andersen* Factors

Once a Court has calculated the lodestar, it may adjust the award after considering the *Arthur Andersen* factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Fluorine on Call, Ltd., v. Flourogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). "A litigant is not required to present evidence on each of these factors." *In re Estate of Vrana*, 335 S.W.3d 322, 329-30 (Tex. App.—San Antonio 2010, pet. denied). "[T]he most critical factor in determining an award of attorneys' fees is the degree of success obtained by the victorious plaintiffs." *Northwinds Abatement, Inc. v. Empl'rs. Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001) (internal quotations and citations omitted).

#### b. No Adjustment to the Lodestar Is Warranted

The Court determines that the circumstances of this case do not warrant an adjustment to the lodestar. For one, the factors that would warrant an increase or decrease have already been considered when the Court made its determination regarding the reasonable hours expended and

the hourly rates. *See Jason D.W. v. Houston Indep. School Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (discussing the *Johnson* factors and noting that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted"). For example, factors (1), (2), (3), (6), (7), and (8) are all factors that are accounted for in the Court's determination of the rate of attorneys' fees or in the determination of hours reasonably expended. *See supra* at n.15, 18. Additionally, the most important factor, the result obtained by the prevailing party, is favorable to Compass, but is not so remarkable as to warrant an additional award. After all, the lodestar "is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). The circumstances of this case that are exceptional are reflected in the lodestar calculation and do not warrant an adjustment based on the *Arthur Andersen* factors.

Lastly, Compass has argued for an award of attorneys' fees that would compensate it for fees it may incur on appeal and in pursuing its ongoing claims against Vey and Casa. Mot. 5-6. However, Compass fails to provide the Court with sufficient information from which the Court could calculate a reasonable award for appellate fees and fees associated with future litigation. Instead, Compass merely argues that the 15% award it seeks, based on two of the promissory notes, is sufficient to compensate it for fees and costs already incurred, in addition to future costs. *Id.* For the reasons already stated, the Court rejects the 15% figure as unreasonable in this case. Having no evidence from which to make a determination of the award for attorneys' fees on appeal, the Court will not speculate and will not add additional fees for the future litigation.

### c. Final Calculation

There are two further issues that complicate the calculation of attorneys' fees in this case. First, Compass has already applied $145,237.47 of attorneys' fees to the Veytias's loan balance on one of Vey's loans. Mot. 4, 7; Resp. ¶ 14. The Veytias have not argued that the $145,237.47 should be considered as attorneys' fees rather than as part of the judgment on the outstanding loan balances. Instead, both parties agree that the Court should reduce its award of attorneys' fees by $145,237.47. Mot. 4, 7; Resp. ¶ 14. Therefore, the Court will subtract $145,237.47 from the lodestar of $564,816.60 to arrive at its final total calculation of $419,579.13.

The second complication is that Veronica Veytia is not liable for two out of the ten loans at issue in this case. Summ. J. Order 15, 19; Mot 8. Therefore, to apportion the fees accordingly, the Court will enter judgment against Carlos Veytia, separately from Veronica Veytia, for two-tenths of the total award of attorneys' fees, resulting in $83,915.83. Both Veytias are jointly and severally liable for the remaining eight-tenths, resulting in $335,663.30. This proportional approach is fair and reasonable under the circumstances because the evidence before the Court shows that "the legal services rendered with respect to the collection of each loan is inextricably intertwined with the legal services rendered with respect to the collection of every other loan in this case." Mot. 7.[19]

### D. Costs

Compass seeks $56,626.90 in "recoverable costs," a number Compass has determined based on its analysis of the detailed billing records and that excludes costs related to the Third-Party Defendants. Second Supp. 3-4, 6, Exs. B, C. Compass argues that the terms of the relevant guaranty agreements entitle Compass to recover all of its costs and expenses incurred in

---

[19] This method was proposed by Compass in its Motion and the Veytias did not object or propose an alternative method.

this litigation. *Id.* 3-4. (citing to the guaranty agreements and to the Summary Judgment Order). The Veytias have not disputed Compass's calculation of the costs, nor have the Veytias raised any legal objections to the types of costs included. In light of the foregoing, the Court concludes that the Veytias are liable for the costs and expenses based on the terms of the relevant guaranty agreements and that Compass's calculations are supported by the record.

For the reasons already stated, the Court will assess two-tenths of the costs against Carlos Veytia separately and eight-tenths against the Veytias jointly and severally. Therefore, Carlos Veytia is liable for $11,325.38 in costs; Carlos and Veronica Veytia are jointly and severally liable for $45,301.52 in costs.

## IV.   CONCLUSION

Although Compass is entitled to an award of attorneys' fees, the amount Compass seeks exceeds what the Court determines to be reasonable under the circumstances. Accordingly, the Court's determination reflects a reduced number of hours billed and a reduced hourly rate for partners. Given the lack of objections to Compass's assessment of costs, the Court will award Compass the full amount that it has requested.

Accordingly, **IT IS ORDERED** that Compass's "Motion for Attorneys' Fees" (ECF No. 191) is **GRANTED** in part.

**IT IS FURTHER ORDERED** that Compass Bank shall have and recover $335,663.30 in attorneys' fees and $45,301.52 from Carlos E. Veytia and Veronica L. Veytia, jointly and severally, plus post-judgment interest at the applicable statutory rates or as allowed under the law.

15

**IT IS FURTHER ORDERED** that Compass Bank shall have and recover $83,915.83 in attorneys' fees and $11,325.38 in costs from Carlos E. Veytia, plus post-judgment interest at the applicable statutory rates or as allowed under the law.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**FINALLY, IT IS ORDERED** that the Clerk of the Court shall **CLOSE** this case.

**SIGNED** this **24th day of February, 2012**.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE